UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JORGE LUIS PEREZ GUZMAN,

          Petitioner,

    v.

                             Case No. 2:26-cv-835-KCD-DNF

WARDEN, GLADES COUNTY
DETENTION CENTER, U.S.
ATTORNEY GENERAL PAMELA
BONDI, ACTING DIRECTOR-ICE
TODD LYONS, MIAMI USCIS
DIRECTOR GARRET RIPA,

          Respondents.

                                /

## **ORDER**

Jorge Luiz Perez Guzman, a Venezuelan national, petitions this Court for a writ of habeas corpus challenging his detention by U.S. Immigration & Customs Enforcement ("ICE"). (Doc. 1.)[1] He points to a straightforward statutory command: under federal law, noncitizens cloaked with Temporary Protected Status ("TPS") cannot be detained or deported. *See* 8 U.S.C. § 1254a(d)(4). Because he believes he is a TPS beneficiary, Guzman argues his ongoing confinement violates both the Immigration and Nationality Act and the Fifth Amendment's Due Process Clause. (Doc. 1 at 7-8.) Additionally, he

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations

argues that ICE violated the *Accardi* doctrine by not following its own regulations when arresting him. (*Id.* at 8.)

A writ of habeas corpus is a mechanism to test the legality of physical confinement, and the burden falls squarely on the petitioner to show that his custody violates the Constitution or federal law. *See* 28 U.S.C. § 2241(c)(3); *Whitfield v. United States Sec'y of State*, 853 F. App'x 327, 329 (11th Cir. 2021). Guzman no longer holds TPS. So his detention doesn't run afoul of the due process clause or INA. And he fails to show how ICE violated its own regulations. His detention is therefore valid and the petition must be denied.

## I. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, grants federal courts the power to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

## II. Discussion

Guzman insists his detention is unlawful for three reasons. He chiefly relies on his allegedly-active TPS. Then he argues that his detention violated the Fifth Amendment's Due Process Clause, before closing with an *Accardi* claim. Each issue fails.

### A. TPS

The TPS program "provides humanitarian relief to foreign nationals in the United States who come from specified countries." *Sanchez v. Mayorkas*, 593 U.S. 409, 412 (2021). Congress enacted the TPS statute "out of concern that the forced repatriation of these individuals could endanger their lives or safety." H.R. Rep. 100-627, at 6 (1988). The Secretary of the Department of Homeland Security may designate a country's citizens for TPS when that country experiences "especially bad or dangerous conditions," such as armed conflict, environmental disaster, or other extraordinary and temporary conditions that threaten that country's citizens' safe return. 8 U.S.C. § 1254a(a)(1)(B), (b)(1); *see also* 6 U.S.C.A. § 557; *Haitian Evangelical Clergy Ass'n v. Trump*, 789 F. Supp. 3d 255, 265 n.1 (E.D.N.Y. 2025) (noting that while the TPS statute vest power in the Attorney General, "Congress has transferred authority related to TPS from the Attorney General to the Secretary of Homeland Security."). This status protects beneficiaries "from removal and authorizes them to work here for as long as the TPS designation

3

lasts." *Sanchez*, 593 U.S. at 412. The Secretary is required to periodically review whether a designated-country's conditions continue to justify TPS protection. § 1254a(b)(3)(A). And in the event the Secretary finds that the country "no longer continues to meet the conditions for designation," that designation shall be terminated "by publishing notice in the Federal Register of the determination." § 1254a(b)(3)(B).

Venezuela was recently designated for TPS twice: first in 2021 and then again in 2023. Beneficiaries of the 2023 designation enjoyed TPS through April 2, 2025. *Extension and Redesignation of Venezuela for Temporary Protected Status*, 88 FR 68130-01. That status was later extended through October 2, 2026, to "existing TPS beneficiaries" whose timely TPS re-registration applications were approved. *Extension of the 2023 Designation of Venezuela for Temporary Protected Status*, 90 FR 5961-01. But all this was later undone.

In February 2025, then-DHS Secretary Noem vacated the 2023 TPS extension and ultimately terminated Venezuela's designation altogether. *Vacatur of 2025 Temporary Protected Status Decision for Venezuela*, 90 FR 8805-01; *Termination of the October 3, 2023 Designation of Venezuela for Temporary Protected Status*, 90 FR 9040-01. This meant that for beneficiaries of the 2023 Venezuela designation, their TPS expired on April 2, 2025.

4

*Termination of the October 3, 2023 Designation of Venezuela for Temporary Protected Status*, 90 FR 9040-01.

No one disputes that Guzman held TPS under the 2023 Venezuela designation. The only issue is whether that status is still active. The Court concludes that it is not.

On its face, Guzman's TPS expired on April 2, 2025. (*See* Doc. 1-1 at 20-21); *see also Extension and Redesignation of Venezuela for Temporary Protected Status*, 88 FR 68130-01. When that day passed, his status left with it. Still, Guzman protests that he filed his re-registration application back in January 2025—months before his November 2025 detention. (Doc. 1 at 8; Doc. 1-1 at 23.) But a pending re-registration application does not confer full TPS status or its attendant protections against detention. *See Arcila Perez v. Noem*, No. 2:26-CV-00107-SPC-NPM, 2026 WL 386699, at *1 (M.D. Fla. Feb. 12, 2026); *Gonzalez v. Jeremy Casey, Warden of Imperial Reg'l Det. Facility of U.S. Immigr. & Customs Enf't, et al.*, No. 3:26-CV-01265-RBM-MMP, 2026 WL 1333767, at *4 (S.D. Cal. May 13, 2026); *J.G.J. v. Sage*, No. 3:26-CV-706, 2026 WL 915576, at *8 (M.D. Pa. Apr. 3, 2026); *Danyil K. v. Bondi*, No. 1:25-CV-242, 2026 WL 1234577, at *1 (S.D. Tex. Apr. 17, 2026); *Guillen v. Soto*, No. CV 26-3285 (SDW), 2026 WL 1005326, at *2 (D.N.J. Apr. 14, 2026). Because Guzman's re-registration application was never actually approved, he cannot claim immunity from detention. *See Guevara, v. Waren, Florida*

5

*Soft Side South et al.*, No. 2:26-CV-01193-SPC-DNF, 2026 WL 1191016, at *2 (M.D. Fla. May 1, 2026); *Granadillo-Arambule v. James A. Daley, et al.*, No. 2:26-CV-00036-SCM, 2026 WL 1157161, at *2 (E.D. Ky. Apr. 29, 2026); *Geincharles v. Rokosky*, No. 26-CV-00150-ESK, 2026 WL 266093, at *2 (D.N.J. Feb. 2, 2026). And even if he could, the fact remains that the extension has been canceled. So Guzman's status is inactive. *See Granadillo-Arambule*, 2026 WL 1157161, at *2; *Diaz Fernandez v. Warden, N. Lake Corr. Facility*, No. 1:26-CV-152, 2026 WL 621332, at *3 n.6 (W.D. Mich. Mar. 5, 2026); *Quintana Gomez v. Farmer*, No. 1:26-CV-854, 2026 WL 947912, at *2 n.4 (W.D. Mich. Apr. 8, 2026); *Navas v. Att'y Gen. of the United States,* No. CV 26-66-DLB, 2026 WL 797142, at *1 (E.D. Ky. Mar. 23, 2026).

Guzman tries to skirt this expiration issue by pointing cross-country to *National TPS Alliance v. Noem*. No. 25-CV-01766-EMC, 2025 WL 3539156 (N.D. Cal. Dec. 10, 2025). The California district court there declared the termination of the Venezuelan TPS program unlawful. *Id.* But that judgment is not binding on this Court and it has little effect on the habeas petition here. *See Herrera v. Noem*, No. CV-26-00625-PHX-MTL (JFM), 2026 WL 800721, at *9 (D. Ariz. Mar. 12, 2026); *Gonzalez*, 2026 WL 1333767, at *4; *Jesus Ferrer-Moran v. Kevin Raycraft et al.*, No. 1:26-CV-951, 2026 WL 1052364, at *2 (W.D. Mich. Apr. 20, 2026); *Pirela- Altamar v. Raycraft*, No. 1:26-CV-388, 2026 WL 820371, at *1 (W.D. Mich. Mar. 25, 2026); *Quintero v.*

6

*Francis*, No. 25-CV-10107 (MKV), 2026 WL 265921, at *1 (S.D.N.Y. Feb. 2, 2026).

Guzman thus fails to show that he currently has TPS or that he had this status when ICE detained him. His challenge to his detention under § 1254a(d)(4) is therefore rejected.

### B. Due Process

Guzman separately argues that his detention violates the Fifth Amendment "because it is not rationally related to any immigration purpose; because it is not the least restrictive mechanism for accomplishing any legitimate purpose the government could have in imprisoning [him]"; and he was given no process before he was deprived of his liberty. (Doc. 1 at 7.)

To be sure, the Fifth Amendment entitles noncitizens to due process during deportation proceedings. Yet "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). "[T]he through line of history is recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens." *Dep't of State v. Munoz*, 602 U.S. 899, 911-12 (2024). "In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Matthews v. Diaz*, 426 U.S. 67, 79-80 (1976).

7

Because immigration detention is a civil tool rather than a criminal penalty, the constitutional line is generally drawn at punishment. *See Rodriguez-Fernandez v. Wilkinson*, 654 F.2d 1382, 1387 (10th Cir. 1981). By contrast, the Government can lawfully hold a noncitizen to ensure they are present for removal or to keep the public safe. That is simply the machinery of the immigration system doing its job. A substantive due process violation happens only when that machinery breaks down—when the detention loses its reasonable connection to effectuating a removal and morphs into a penalty. *Cf. Lee v. Stone*, No. 2:11-CV-00014-RWS, 2011 WL 4553147, at *7 (N.D. Ga. Aug. 25, 2011). So long as the custody serves a legitimate immigration purpose rather than acting as a punitive measure, it stays on the right side of the Constitution. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 747 (1987); *Rodriguez v. Perry*, 747 F. Supp. 3d 911, 917 (E.D. Va. 2024) ("[A]liens . . . have a substantive due process right to be free of arbitrary confinement pending deportation proceedings.").

Guzman cannot show that his current stint in custody is a punishment masquerading as immigration processing or is otherwise arbitrary. The INA explicitly authorizes his detention. *E.g.*, *Dominguez v. Mordant*, No. 2:26-CV-897-KCD-DNF, 2026 WL 1098252, at *3 (M.D. Fla. Apr. 23, 2026). Guzman is currently in removal proceedings, and "ICE may revoke a noncitizen's parole to proceed with removal." *Dominguez v. Mordant,* No. 2:26-CV-897-KCD-

8

DNF, 2026 WL 1098252, at \*3 (M.D. Fla. Apr. 23, 2026). His detention thus serves a recognized, legitimate government objective.

### C. The *Accardi* Doctrine

Guzman lastly presses a claim under the *Accardi* doctrine. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). The doctrine's premise is clear: "an agency must abide by its own regulations." *Chevron Oil Co. v. Andrus*, 588 F.2d 1383, 1386 (5th Cir. 1979). "[A]gency deviation from its own regulations and procedures may justify judicial relief in a case otherwise properly before the court." *Jean v. Nelson*, 727 F.2d 957, 976 (11th Cir. 1984). And it "goes without saying that ICE, like all government agencies, must follow its own regulations." *Roble v. Bondi*, 803 F. Supp. 3d 766, 774 (D. Minn. 2025).

Guzman stresses that ICE violated 8 C.F.R. § 1236.1(c)(9) in two ways. (Doc. 10 ¶ 50.) First, he notes that his release was revoked absent any change in circumstance. (*Id.*) Then he insists that he was provided no "pre-deprivation process or notice by an authorized official." (*Id.*) Neither claim works.

Section 1236.1(c)(9) permits a noncitizen's release to "be revoked at any time in the discretion of" various officials—including an "officer in charge." This provision says nothing about what ICE must provide pre-revocation. And Guzman does not argue that an unauthorized official decided to revoke

9

his release. His *Accardi* claim thus fails to show how ICE violated this regulation. *See Blankenship v. Hall*, 542 F.3d 1253, 1270 (11th Cir. 2008) ("It is the petitioner's burden to establish his right to habeas relief and he must prove all facts necessary to show a constitutional violation."); *see also Huete-Alvarez v. Bondi*, No. 2:26-CV-600-KCD-NPM, 2026 WL 1097145, at *6 (M.D. Fla. Apr. 23, 2026).

## IV. Conclusion

Habeas corpus is a powerful tool, but it requires a fundamental premise: that the government is holding someone unlawfully. Guzman cannot clear that bar. His TPS has expired and no longer shields him from detention. His custody sits comfortably within constitutional bounds. And he hasn't shown how ICE ignored its own rules in detaining him. Since his detention appears lawful, the Court has no basis to intervene. Accordingly, the Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**. The Clerk is **DIRECTED** to enter judgment, terminate any pending motions, and close the file.

**ORDERED** in Fort Myers, Florida on May 20, 2026.

Kyle C. Dudek
United States District Judge

10